# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Environmental Chemical Corporation | )  ASBCA No. 58871 |
| | ) |
| Under Contract No. FA8903-06-D-8511 | ) |

APPEARANCES FOR THE APPELLANT:  R. Dale Holmes, Esq.
    Amy M. Kirby, Esq.
    Justin J. Williams, Esq.
     Cohen Seglias Pallas
      Greenhall & Furman PC
     Philadelphia, PA

    Kevin J. Kelly, Esq.
    Corporate Counsel

APPEARANCES FOR THE GOVERNMENT:  Lt Col Matthew J. Mulbarger, USAF
    Air Force Chief Trial Attorney
    Anna F. Kurtz, Esq.
    Capt Christopher M. Kovach, USAF
    Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL ON APPELLANT'S MOTION TO AMEND COMPLAINT

### INTRODUCTION

Appellant moves to amend its complaint to add two counts: one alleging unabsorbed overhead resulting from delay to the contract work, and one alleging breaches of the implied duty of good faith and fair dealing. We grant the motion in part, and deny the motion in part.

### STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

In April 2006, Air Force Materiel Command (Air Force) awarded Contract No. F8903-06-D-8511, an indefinite delivery, indefinite quantity Heavy Engineering and Repair (HERC) contract, to Environmental Chemical Corporation (ECC) (R4, tab 9 at 1-2). On 2 September 2011, the Air Force awarded Task Order 81 to the contract to ECC, for the design and construction of buildings and parking lots at Kandahar Air Field (KAF), in Afghanistan, for the fixed price of $22,974,828 (R4, tab 21 at 1-2). Task Order 81 required the construction of several buildings on KAF

by 2 September 2012 (*id.* at 3). On 23 August 2012, the Air Force unilaterally issued Modification No. 3 to Task Order 81, combining some of the buildings, reducing the size of other buildings, and making other changes to the work (R4, tab 24 at 1, 39-40). Modification No. 3 also increased the contract price by $1,526,345, and extended the construction completion date by 129 days, to 9 January 2013 (*id.* at 2-3).

On 24 January 2013, ECC presented to the contracting officer a claim for $4,363,296, for subcontractor costs associated with Modification No. 3, and for costs incurred during a 174-day period of alleged delay that ECC asserted was caused by the late issuance of Modification No. 3 from 2 March 2012 through 24 August 2012 (R4, tab 81 at 1-2, 13).[1] The claim references "substantial Govt.-initiated changes to the project design which were introduced soon after award of the Task Order on September 2, 2011" (*id.* at 1). The claim also references specific "design delays," including (1) a proposal during a 19 September 2011 "initial design charrette" to combine several buildings into one complex;[2] (2) the issuance by the Air Force on 21 September 2011 of a new statement of requirements (SOR) for Task Order 81; (3) a delay through 31 October 2011 of the submittal of the 35% design due to the new SOR; (4) the approval by the Air Force of the 35% design on 4 November 2011; (5) the issuance by the Air Force of further revisions to the SOR on 19 January 2012, and 23 February 2012; and (6) the issuance of Modification No. 3 and a notice to proceed (NTP) with that modification in August 2012 (*id.* at 11-13). On 8 March 2013, ECC resubmitted its claim, reducing the claim amount to $4,274,135, and certifying that amount (R4, tab 84 at 3-4). On 28 March 2013, ECC submitted the claim for a third time, increasing the claim amount to $4,282,762 (R4, tab 89 at 8-9). On 25 April 2013, ECC certified the 28 March 2013 claim amount (R4, tab 92 at 6).

From 2 April 2013 through 16 October 2013, two Air Force program managers provided the contracting officer a series of advice memoranda regarding the claim (R4, tabs 90, 96, 99, 100); the final memorandum recommended that an award to ECC of 303 days (the 129 days awarded in Modification No. 3 plus the 174 days identified in the claim) was appropriate (R4, tab 100 at 6). On 11 September 2013, ECC filed this appeal from the deemed denial of its claim. On 15 October 2013, ECC filed its complaint, requesting $4,282,762 and a time extension of 181 days. On 6 November 2013, the contracting officer issued a final decision awarding to ECC the $1,526,345 amount set forth in Modification No. 3 (R4, tab 101 at 1, 9).

On 8 June 2015, ECC filed a document, styled "Amended Complaint," which added two counts: (1) a request for breach damages for alleged violations of the

---

[1] The claim letter erroneously refers to Modification No. 3 as "Modification No. 2" (R4, tab 81 at 1).

[2] A "charrette" is a type of meeting. NEW OXFORD AMERICAN DICTIONARY 293 (3d ed. 2010).

implied duty of good faith and fair dealing (Count II), and (2) a request for "*Eichleay*" damages for allegedly unabsorbed overhead during the period 19 September 2011 through 10 May 2012 (Count III). On 17 June 2015, the Air Force filed its opposition to amendment of the complaint, pointing out that ECC had not requested leave to amend, and contending that (1) amendment would prejudice the Air Force because discovery was scheduled to close on 27 June 2015, and because a hearing was scheduled to commence on 13 July 2015; and (2) the claims that were the subject of the amendment had not been presented to the contracting officer. The Air Force requested that if the motion were granted the hearing be postponed to allow it to conduct further discovery. On 24 June 2015, the Board rejected the motion because ECC had not requested leave to amend its complaint.

On 26 June 2015, ECC requested leave to amend its complaint to add Counts II and III. The Air Force opposed the motion on 6 July 2015. On 9 July 2015, the Board deferred indefinitely a decision upon the motion.[3] During the period 13-17 July 2015, the Board conducted five days of hearing upon the issue of entitlement, including the taking of evidence on Counts II and III of the proposed amended complaint. At the conclusion of the fifth and final scheduled day of the entitlement hearing, the Air Force asserted that the prejudice to it if the motion to amend were granted would be erased if it were allowed to conduct further discovery upon, and have an opportunity to present further evidence upon, Counts II and III. ECC consented that the Air Force be able to conduct further discovery. The Board adjourned the hearing pending a decision regarding further proceedings. On 20 July 2015, the Board issued an order that the record would remain open pending, at the earliest, a decision upon appellant's motion to amend, but that no further evidence would be presented to the Board until further notice.

## DECISION

*Jurisdiction to entertain the proposed amendments to the complaint*

We have jurisdiction to entertain the appeal pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101-7109. The Board may permit a party to amend its pleading upon conditions fair to both parties. Board Rule 6(d) (revised 21 July 2014). However, the Board will deny a request to amend a complaint to add to the appeal what is tantamount to a new claim; that is, a claim that is based upon operative facts not already presented in the claim that is the subject of the appeal. *GSC Construction, Inc.*, ASBCA No. 59046, 15-1 BCA ¶ 35,882 at 175,429. That is because the Board does not possess jurisdiction, within a given appeal, to entertain a claim that is new to the appeal. *Id.* at 175,430.

---

[3] Board Rule 7(b) (2014) authorizes the Board to defer ruling on motions as appropriate.

3

However, rigid adherence to the exact language or structure of the original claim is not required. *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003). The Board possesses jurisdiction to entertain claims that arise from the same operative facts as those presented to the contracting officer, claim essentially the same relief, and merely assert differing legal theories for that recovery. *Id.* New or modified allegations in an amended complaint that do not change the operative facts of the claim to the contracting officer, or change the essential nature of those facts, do not constitute a new claim. *See Lockheed Martin Aircraft Center*, ASBCA No. 55164, 07-1 BCA ¶ 33,472 at 165,934.

### *Count II: Breach of the implied duty of good faith and fair dealing*

Count II of the proposed amended complaint seeks unquantified breach damages for the following alleged breaches of the implied duty of good faith and fair dealing by the Air Force: (1) failure to issue a timely revised SOR, (2) issuance of multiple, revised SOR over a period of months, (3) refusal to issue a "full" NTP to allow construction to proceed until 356 days into contract performance, and (4) "refusal to issue a modification for [ECC's] delay costs when those costs had been found to be due, and instead signing an arbitrary Final Decision denying those costs" (am. compl. ¶¶ 79-80). The claim to the contracting officer includes references to some of the events that Count II alleges. For example, the claim references the wait for a revised SOR, the receipt of more than one revised SOR, and the issuance—nearly a year after the award of the Task Order 81 and more than 11 months after the initial design charrette—of a notice to proceed with Modification No. 3. Accordingly, we find that the claim to the contracting officer presents the operative facts from which arise items (1), (2), and (3) of paragraph 79 of Count II of the proposed amended complaint, providing the Board's jurisdiction to entertain those elements of Count II.

However, the Board does not possess jurisdiction to entertain ECC's claim that the Air Force breached the implied duty of good faith and fair dealing by signing an "arbitrary" final decision subsequent to refusing to issue a modification for certain delay costs. From the proposed amended complaint, we understand that claim to rest upon allegations that the contracting officer signed a final decision awarding to ECC only the same $1,526,345 and 129 delay days set forth in Modification No. 3, despite the advice of Air Force program managers that that ECC was entitled to more delay days (am. compl. ¶¶ 73-78). However, the claim to the contracting officer does not set forth those facts, which is not surprising because ECC prepared the final version of its claim on 28 March 2013, before the program managers provided their advice, and before the contracting officer signed his final decision. Consequently, the Board does not possess jurisdiction to entertain ECC's Count II claim that the Air Force breached the implied duty of good faith and fair dealing by "refus[ing] to issue a modification for [ECC's] delay costs when those costs had been found to be due, and instead signing an [allegedly] arbitrary Final Decision denying those costs" (am. compl. ¶ 79).

4

*Count III:  Eichleay damages*

The Board possesses jurisdiction to entertain ECC's *Eichleay* claim.  Count III of the proposed amended complaint seeks $446,060.16 in *Eichleay* damages to recover for allegedly unabsorbed home office overhead during what ECC alleges was a government-created indefinite suspension of work that began on 19 September 2011 and ended on 10 May 2012 (am. compl. ¶¶ 81-88).  ECC alleges that "[o]ther than mobilization to the project site, and limited work on the 35% design, [the Air Force's] actions during the September 19, 2011 Design Charrette, and contract administration decisions thereafter, placed [ECC] in a near total indefinite suspension of work on the project, until [the Air Force] issued a partial NTP on May 10, 2012," and that "[b]ecause of the indefinite suspension of work during the Design Charrette, [ECC] was greatly limited, after mobilization, in work and contract earnings that were available, until [the Air Force] issued the partial NTP at [ECC's] request on May 10[,] 2012" (am. compl. ¶¶ 82-83).

In our view, the *Eichleay* claim arises from the same set of operative facts that were presented in the claim submissions to the contracting officer, adds some new or modified allegations that do not change those facts or their essential nature, claims essentially the same relief, and merely asserts a differing legal theory for that recovery.  Therefore, the *Eichleay* claim is not new to the appeal.  The *Eichleay* claim is essentially consistent with the account presented to the contracting officer that ECC was entitled to recover the cost of delays that began with a proposal on 19 September 2011 to change the statement of requirements, and ended in August 2012 with the Air Force issuing a notice to proceed with Modification No. 3.  Although the claim to the contracting officer seeks costs for only one period of specific delay--from 2 March 2012 through 24 August 2012--the allegations in the proposed amended complaint that ECC was in a near-total suspension with limited earnings can be reasonably inferred from ECC's account in the claim presented to the contracting officer that before the issuance of the notice to proceed with Modification No. 3, ECC performed only 35% design work.  The allegation in Count III that the Air Force issued a partial NTP on 10 May 2012, although new, merely limits the *Eichleay* claim to a portion of the 19 September 2011 through 24 August 2012 timeline presented to the contracting officer.  Indeed, 69 days of the 19 September 2011 through 10 May 2012 *Eichleay* period alleged in the amended complaint overlap with the 2 March 2012 through 24 August 2012 "schedule impact" period that the claim to the contracting officer calls out expressly.  That is, the two periods have 2 March 2012 through 10 May 2012 in common.  Finally, Count III requests essentially the same relief requested in the claim to the contracting officer:  costs that ECC contends it incurred as a result of what it characterizes as the Air Force's delay of the project.

*Trepte Construction Co.*, ASBCA No. 38555, 90-1 BCA ¶ 22,595, upon which the Air Force relies, is meaningfully distinct from these circumstances.  In *Trepte*, the

5

Board struck from an amended complaint a constructive acceleration claim, finding that the claim had not been presented in the delay claim submitted to the contracting officer. *Id.* at 113,385-86. The Board rejected the contractor's contention that the constructive acceleration claim was not new, explaining that the basic operative facts necessary to establish such a claim (including an express or implied government order to overcome excusable delay or to complete performance by a date earlier than that by which the contractor was entitled to perform) "are substantially different than those by which entitlement to delay costs can be ascertained." *Id.* at 113,386. Here, too, ECC presented a delay claim to the contracting officer; however, unabsorbed overhead resulting from suspension of work by the government, such as that sought in Count III, is a form of delay damages. *See Ricway, Inc.*, ASBCA No. 29983, 86-2 BCA ¶ 18,841 at 94,955. Moreover, we have found that the claim presented to the contracting officer sets forth the facts from which the allegations in Count III that Air Force delays placed ECC in a near-total, indefinite suspension of work can be reasonably inferred.

*Prejudice*

In consideration of the evidence taken during the five days of entitlement hearing, the Air Force has advised that the prejudice that it contends it would suffer from the amendment of the complaint to add Counts II and III would be erased if it were allowed to conduct some limited discovery upon those counts. In view of the Board's jurisdictional ruling, the Air Force may conduct such discovery and present additional evidence upon entitlement regarding items (1), (2), and (3) of paragraph 79 (from Count II), as well as upon Count III.

## CONCLUSION

For these reasons, the motion to amend the complaint is granted in part, and denied in part. The motion is denied with respect to the claim in Count II of the proposed amended complaint that the Air Force breached the implied duty of good faith and fair dealing by "refusal to issue a modification for [ECC's] delay costs when those costs had been found to be due, and instead signing an arbitrary Final Decision denying those costs" (am. compl. ¶¶ 73-78, item (4) of ¶ 79).[4] The motion is otherwise granted. The Air Force may conduct additional discovery, and present additional evidence regarding entitlement, upon the new claims, consistent with this

---

[4] We express no opinion on whether such a claim without the jurisdictional issue involved here is a claim within the meaning of the Contract Disputes Act.

6

opinion. The evidentiary record upon entitlement regarding those items remains open. The Board will address a schedule for further proceedings in a separate order.

Dated: 14 September 2015

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58871, Appeal of Environmental Chemical Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7